JOHN ANTHONY GENTRY, CPA, *sui juris*
Candidate for State Senate
208 Navajo Court
Goodlettsville, TN 37072
(615) 351-2649
johng@wethepeoplev50.com

**FILED**

VANESSA L ARMSTRONG, CLERK

Mar 30 2020

U.S. DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY

Next Friend for Petitioner, NEELY PETRIE-BLANCHARD

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF KENTUCKY
### AT OWENSBORO

| | |
|---|---|
| COMMONWEALTH OF KENTUCKY ) | |
| ) | |
| Ex Parte ) | |
| ) | |
| NEELY PETRIE-BLANCHARD ) | |
| ) | |
| Petitioner ) | **CASE NO. 4:20-CV-00049** |
| ) | |
| vs. ) | **AMENDED CORRECTED** |
| ) | **PETITION FOR WRIT OF** |
| MIKE LOUIS, Hopkins County, KY Jail ) | **HABEAS CORPUS PURSUANT** |
| Superintendent; COMMONWEALTH OF ) | **TO 28 U.S.C. 2241** |
| KENTUCKY; SUSAN BLANCHARD; ) | |
| OTHER STATE OFFICIALS UNNAMED ) | |
| OTHER COUNTY OFFICIALS UNNAMED ) | **Senior Judge J.H. McKinley, Jr.** |
| ) | |
| Respondents ) | |
| ) | |

Comes now John A Gentry, "next friend" on behalf of Petitioner NEELY PETRIE-

BLANCHARD, amending and correcting Petition For Writ of Habeas Corpus pursuant to Fed. R.

Civ. P. Rule 15(a)(1)(A). Petition is "corrected" due to inadvertent error, misspelling PETRIE,

incorrectly as PETRY. This petition is further amended providing clear justification for this

Court's jurisdiction, as well as provides further legal argument of wrongful incarceration.

Petitioner, NEELY PETRIE-BLANCHARD, aka NEELY LAUREN-RAY BLANCHARD,

1

petitions this Court for a writ of habeas corpus to remedy her unlawful detention by Respondents, as follows;

## JURISDICTION

1.      This action arises under the Constitution of the United States, and the Administrative Procedure Act ("APA"), 5 U.S.C. § 701, et seq.

2.      This Court has jurisdiction under 28 U.S.C. §2241; Art. I, § 9, cl. 2 of the United States Constitution (Suspension Clause) and 28 U.S.C. §133, as Petitioner is presently in custody under color of authority, and such custody is in violation of the Constitution. This Court may grant relief pursuant 28 U.S.C. § 2241, 5 U.S.C. § 702, and the All Writs Act, 28 U.S.C. § 1651.

3.      28 U.S. Code § 2254. State custody; remedies in Federal courts, provides the following;

> (a) The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court **only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.**
> (b)
> (1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—
> (A) the applicant has exhausted the remedies available in the courts of the State; or
> (B)
> **(i) there is an absence of available State corrective process; or (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.**

4.      Due to the current COVID-19 pandemic and social distancing guidelines, "next friend" John A Gentry, cannot or should not travel to Kentucky from his residence in Goodlettsville, Tenn. located in Sumner County, Tennessee to file this Petition for Writ of Habeas Corpus in a Kentucky state court venue. Sumner County Tennessee government has issued a

"shelter in place order" communicated to the citizens recently.  To "next friend's" best knowledge, Kentucky courts have not implemented email filing as this Honorable US District Court has done, providing access to Courts through the intake-kywECF@kywd.uscourts.gov email address. **Therefore, due to the COVID-19 pandemic, there is an absence of available State corrective process available to "next friend" John A Gentry to file a habeas petition in state court.**

5.        Moreover, here in this matter grounds are that Petitioner is in custody in violation of the Constitution of the United States, and there is an **absolute absence of available state corrective process**, due to the incontrovertible fact that the Commonwealth of **Kentucky is no longer republican in character or form**, and is in gross violations itself of the Kentucky Constitution and The Constitution of the United States.  In addition to seeking Writ of Habeas Corpus, Petitioner asserts her right guaranteed in U.S. Constitution, Art. I, Amend. I, to petition the government for a redress of grievances.   Petitioner also makes "guarantee demand" pursuant to U.S. Constitution, Art. IV, § 4; that "*The United States shall guarantee to every state in this union a republican form of government.*"

6.        **The facts establishing that the Commonwealth of Kentucky is no longer republican in character or form are incontrovertible.**

> a. **The unconstitutional statutes that the Commonwealth of Kentucky has contrived and then charged Petitioner, are not only void for vagueness, but they were enacted in violation of the separation of powers doctrine, and effectively established "guilt" in the legislation, prior to any purported violations.** A state government acting outside and in violation of its constitution is not republican in character or form.   **"the authority of the government under which they are appointed, as well as its republican character, is recognized by the proper constitutional authority.**" *Luther v. Borden, 48 US 1, 12 L. Ed. 581, - Supreme Court, 1849.*
>
> b. Pursuant to Kentucky Constitution, Bill of Rights, Clause Six: The right of assembling together in a peaceable manner for their common good, **and of applying to those invested with the power of government for redress of grievances or other proper purposes, by petition, address or remonstrance.**

3

      i. The people of the Commonwealth of Kentucky have been kept ignorant of the right to petition the powers of the government for redress of grievance, or other proper purpose, by petition, address, or remonstrance.

     ii. Not one branch of the Kentucky government provides any means or process for the exercise of the right of petition by petition, address or remonstrance. Therefore, that right is incontrovertibly and undeniably oppressed by the Kentucky government and the Commonwealth of Kentucky is not republican in character or form. In the case, *United States v. Cruikshank*, 92 US 542, 23 – Sup. Ct, 1876 (at 553), the Supreme Court stated: "*the very idea of a government, republican in form, implies a right of its citizens to petition for redress of grievances.*"

   iii. The Commonwealth of Kentucky can present no evidence that the right of petition has not been oppressed, the Commonwealth of Kentucky can present no evidence of this right being exercised in recent history and therefore, the Commonwealth of Kentucky has forsaken its republican character.

c. In the Commonwealth of Kentucky there is no check of one branch over the other of the judiciary, and therefore there is no objective oversight of the Kentucky judiciary. **Without objective oversight of the judiciary, Petitioner has no assurance of fair due process since the right of due process cannot be guaranteed to her without objective oversight of the judiciary.** Pursuant to the Kentucky Constitution, § 66 the Kentucky House of Representatives has the sole power of impeachment, but that power is never exercised over the judiciary since inception of the Kentucky Judicial Conduct Commission (JCC) in an unlawful usurpation of legislative power by the judiciary. Also essential to a government being republican in character, is the separation of powers and checks of one branch over the other and the **JCC is in violation of the separation of powers doctrine, and removes the check of one branch over the other since the JCC is comprised primarily of judges.**

d. The Commonwealth of Kentucky has blatantly engaged in **<u>malicious prosecution</u>** by fraudulently alleging kidnapping charges (see *KARSNER v. Commonwealth*, 582 SW 3d 51 - Ky: Court of Appeals 2018 that **kidnapping is "inapplicable" in conjunction with custodial interference**, and seeking to sway public opinion with **false allegations of "history of mental illness" and falsified character assignation that Petitioner has declared herself a "sovereign citizen".** A government that engages in frauds and libelous character assignations of this nature, and maliciously seeks to prosecute inapplicable criminal code **is most certainly not a government that is republican in character or form.**

4

7.        **Therefore, considering the above facts that the Commonwealth of Kentucky is not a government republican in character are "***circumstances exist that render such process ineffective to protect the rights of the applicant.***"

8.        **Bail is excessive**.  Pursuant to the Constitution of the United States, Amendment VIII; "*Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted.*"   The Commonwealth of Kentucky which is not a republican form of government as evidenced above, has set excessive bail at ten-thousand dollars ($10,000.00), and requires the full amount paid cash, without a system of bondsmen in the state.  This excessive bail has been set during a COVID-19 pandemic, while the citizenry of the entire nation is concerned about putting food on the table and making rent/mortgage payments, and the federal government has passed emergency legislation to prevent collapse of the entire economy.  "Next Friend" John A Gentry has conducted a fund raiser for Petitioner and has only raised approximately two-thousand dollars ($2,000).  Since it is impossible for "next friend" to raise ten-thousand dollars ($10,000.00), bail is excessive.

9.        Petitioner has already been maliciously prosecuted, deprived God given rights, denied constitutionally protected rights by another state government, the state of South Carolina, that has also forsaken its republican character, as evidenced in exhibits to the petition, and to be further evidenced if necessary.  Petitioner has no desire to be subjected to yet more corrupted state court proceedings, by yet another state government that has forsaken its republican character and makes guarantee demand of the United States pursuant to U.S. Const. Art VI, § 4.

10.       Based on these incontrovertible facts of a government that is not republican in character; **(1)**  that has enacted and then sought to maliciously prosecute under unconstitutional statutes that are void for vagueness, and in violation of the separation of powers, **(2)** that oppresses the right of petition by petition, address or remonstrance, and **(3)** that makes libelous allegations

5

of a "history of mental illness" and character assignation that Petitioner has declared herself a "sovereign citizen to sway public opinion, **this Honorable Court, must take jurisdiction** in recognizing, **there is an *absence of available State corrective process*,** and that Petitioner is in custody in violation of the Constitution or laws or treaties of the United States and, immediately grant Writ to ORDER immediate release of Petitioner.

## VENUE

11.     Pursuant to Braden v. 30th Judicial Circuit Court of Kentucky, 410 U.S. 484, 493-500 (1973), venue lies in the United States District Court for the Western District of Kentucky, the judicial district where Petitioner currently is in custody.

## OATH OF OFFICE & SUPREME LAW OF THE LAND

12.     The Constitution of the United States of America binds all judges to uphold constitutional provisions, and evidences certain rights retained by the people.  Petitioner demands the provisions of the constitution be upheld, and asserts her rights of due process and to Petition for Writ of Habeas Corpus, and to demand a republican form of government and to petition for redress of grievance.  Petitioner holds this court to its oath.  NON EST ARCTIUS VINCULUM INTER HOMINES QUAM JUSJURANDUM; There is no stronger link among men than an oath.

13.     Pursuant to the Constitution of the United States, Amendment XIV, Section I;

> All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the state wherein they reside. No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; **nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.**

14.     Pursuant to the Constitution of the United States, Article VI, Section 1 and 2;

> **This Constitution, and the Laws of the United States** which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the

6

Authority of the United States, **shall be the supreme Law of the Land; <u>and the Judges in every State shall be bound thereby</u>**, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.

The Senators and Representatives before mentioned, and the Members of the several State Legislatures, **and all executive and judicial Officers, <u>both of the United States and of the several States</u>, shall be bound by Oath or Affirmation, to support this Constitution**; but no religious Test shall ever be required as a Qualification to any Office or public Trust under the United States.

15.     Pursuant to Art. I, § 9, cl. 2;

**The privilege of the writ of habeas corpus shall not be suspended**, unless when in cases of rebellion or invasion the public safety may require it.

16.     Guarantee Demand pursuant to Const. of U.S., Art. IV, § 4.

17.     Petitioner asserts her right of due process, and "privilege" to petition for writ of habeas corpus, that justice not be denied, and to prevent the further miscarriage of justice. **Petitioner respectfully demands the court adhere to the constitutional provisions stated above and bar the use of the ordinary case doctrine, and the doctrine of Constitutional avoidance to assure the means to the ends of justice.**

## INTRODUCTION & STATEMENT OF FACTS

18.     The circumstances giving rise to this PETITION FOR WRIT OF HABEAS CORPUS is to protect the rights, welfare, and wellbeing of a United States Citizen from unlawful arrest, incarceration, and malicious prosecution, and in protection of her children already having been injured by the Commonwealth of Kentucky in an unlawful action perpetrated on the petitioner by her mother hereinafter named (the accuser), enabling the petitioners mother to violate her due process rights in vexatious litigation whereas the petitioner is being unlawfully held by the commonwealth and will continue to be falsely imprisoned where this court fails to intervene. The Petitioner, upon information and being charged with felony kidnapping outside the scope of the

Kentucky revised penal code while at the same time being charged with "Custodial Interference, has been advised she will be indicted based solely on information whereas there are public statements in media of the prosecutions' intent to seek criminal indictment in violation of the Kentucky Constitution Section *12    "Indictable offense not to be prosecuted by information -- Exceptions.   No person, for an indictable offense, shall be proceeded against criminally by information, except in cases arising in the land or naval forces, or in the militia, when in actual service, in time of war or public danger, or by leave of court for oppression or misdemeanor in office*" and well established fact in law the prosecution knows, or should know the petitioner cannot be charged with both purported crimes. 582 SW 3d 51 - Ky: Court of Appeals, 2018 As explained by the 1974 Kentucky Crime Commission/LRC Commentary to KRS 509.060, **the combined effect of the custodial interference statute and those prohibiting kidnapping and unlawful imprisonment makes "unlawful imprisonment and kidnapping inapplicable to situations involving the acquisition of control over another because of familial affection or considerations,** and to create a special offense to deal with conduct involving an interference with lawful custody." (at 53).

19.    The petitioner having suffered from a miscarriage of justice in the state caused by said enablement, is in serious immediate danger of further injury that she will sustain without the grant of this EMERGENCY petition. Additional injuries have been sustained by the petitioner, for which the petitioner is within reason to believe the slander, public criticism, and misleading statements of facts being disseminated out in the public, through statements of the actors to various media outlets, that she is mentally unstable will result in the oppression of her children's self-confidence, and self-esteem as a subsequent target of said verbal attacks about their mother, and may lead them to believe that they come from a less than stable and defective place in addition to the injuries the petitioner will sustain being prejudiced locally before a trial. The petitioner is

8

currently unlawfully detained and in the custody of the Kentucky jail without justifiable cause, whereas no warrant issued, and the petitioner is exempt under Title 18 US 1201(a), and with lawful defense of her actions prior to prosecution and arrest under Title L. Kentucky Penal Code § 509.060 In any prosecution for unlawful imprisonment or kidnapping it is a defense that the defendant was a relative of the victim and his sole purpose was to assume custody of the victim.

20.     The accuser had moved to the state of the petitioner with the evident intent to harbor the relationship between the petitioner and the children, and had allowed for the children to remain in the custody of the petitioner prior to this event overnight and without supervision contrary to the court order, leading the petitioner to believe the order was waived by mutual consent of the parties. The accuser, moving to the residing state of the accused, and leaving the children with the accused, clearly demonstrates the accuser was not with fear the children would be harmed, or that they would not be returned to the custody of the accuser, and that was no different in this instance of the petitioner taking the children for fear of their exposure to COVID-19, that caused for the accuser to reported the petitioner for "Kidnapping," that led to her false arrest and incarceration without the consideration by the actors of said exemption and state afforded defense. Furthermore, the petitioner intends to show that the statutes utilized for the malicious prosecution is vague and advantageous to the prosecution causing this false arrest and incarceration and the prosecution being of superior knowledge had a willful choice to execute the law faithfully in trust, for which they have chosen not to do.

21.     The ambiguity in the statute leaves room for misrepresentation by prosecution to the officers and the people, and for this cause leading up to this incident all the way back to 2010 where custody of the petitioners first child was ordered to the grandmother in South Carolina as explained hereinafter. The court of Kentucky, granting custody to the accuser is void under the family code for being ambiguous and Unconstitutionally vague, and induced in fraud deriving

9

from other statues equally Unconstitutionally vague in this instance, and therefore without right of enforcement and contrary to the State's Constitutional clause in Section 2 *"Absolute and arbitrary power denied. Absolute and arbitrary power over the lives, liberty and property of freemen exists nowhere in a republic, not even in the largest majority."* Given the arbitrary decisions of the courts and the show of their willfully use of vague statutes to enforce said arbitrary power, it is the reasonable belief of the petitioner that the guarantee of a republic form of government is not a possibility in the state of Kentucky, and therefore there is no right for redress in the state, and that the Petitioner has no state remedy to pursue for cause.

22.     **The petitioner, without having been brought before a judge immediately** and not being afforded an attorney upon arrest in accordance with The Kentucky Constitution Section 11 *"Rights of accused in criminal prosecution -- Change of venue. In all criminal prosecutions the accused has the right to be heard by himself and counsel; to demand the nature and cause of the accusation against him; to meet the witnesses face to face, and to have compulsory process for obtaining witnesses in his favor."* And Amendment XIV, Section I of the United States Constitution. **The petitioner furthermore having no bail hearing or arraignment** being held after said arrest, is with information the commonwealth has intent to pursue criminal charges for a crime which the petitioner is exempted from, and in advantageously leveraging the vagueness of the conduct prohibited by the kidnapping statute, where a parent has the instinct and obligation to protect, a parent could conform to said law without breaching trust of the child and their moral or religious obligations. There is no way to predict the conduct will lead to any patterned outcome or guarantee that a parent's action to protect would be less required in various circumstances in order to prevent risk of harm to the child. Ordinarily where a parent has possession of the child and is obligated to protect the child, it would be more likely the child is happy, and that the parent has acted to protect the child than any other cause. The law does not provide a means by which the

10

parent can take immediate action, when they are not with custody, to assure they fulfill both their moral and religious obligation. **There is no way to analyze how intervention in such a case would be better for the child in the long run, or that the other party could have superior rights over the child's happiness and safety where the parental instinct is naturally protective and intuitive by consciousness**. No parent would be able to conform to the law without suffering consequences the law cannot protect the parent from, and therefore there is no remedy at law for such a charge and it is facially void and void in its application here.

23.      **The petitioner was notified by the accuser she was feeling ill** prior to taking her children into custody. **This was alarming to the petitioner given the COVID-19 crisis**, and the petitioner later found that her fears were substantiated by her husband on a phone call informing her that one of the twins is ill with a fever after being placed back into the custody of the accuser the mother was trying to protect her children from. The petitioner is a parent and a mother being in a privileged seat of office and with a moral and spiritual obligation to her children above that of the state interest, with a duty and obligation to protect her children from a pandemic declared by the government,  was in the course of fulfilling said obligation with the sole intent to protect them from exposure to illness. The petitioner also has a compelling superior interest in her children for future expectation of a return on her investment in her elder years as the children are obligated to her for support during that time. The state impairing that obligation, by severing the relationship of the family, reduces the mother's likelihood of developing and securing a stable trust with the children that they may not be as likely to supplement her needs in old age. The kids were in immediate danger of suffering irreparable harm or injury had she not taken immediate action and therefore the commonwealth had no standing, jurisdiction, or right of action to obstruct the mother in her natural duty of care.

11

24.     The petitioner relying upon the above named statutes and Constitutional authorities herein, in the course of gaining custody of the children for protection, ultimately lead to the commonwealth actors aiding and abetting false claims being filed into the record, a false report being filed, and injury to the parties based on the sole reliance upon the vague and void kidnapping statute, herein shown, was not with intent to violate the law, is not with the belief she was obligated under the law, and is without knowledge that she is obligated by any other law upon which the commonwealth and accuser ignorantly relies that is superior to the natural moral obligations bestowed upon a mother.

25.     The officials named herein in collusion with the accuser, have obstructed this parent in the course of her faithful discharge of her duties while fully knowing she is a part of privileged class of persons as a parent, and that the **petitioner acted within the confines of the law to the best of her ability and knowledge relying upon the exception set forth in the Title and the recent holdings in Sessions v Dimaya where the Court struck down the "residual clause", which classified every felony that, "by its nature, involves a substantial risk" of "physical force against the person or property" as an aggravated felony**. Like the Immigration statute, the Kidnapping statute and the Custodial Interference statute is improperly classify substantial risk, that a parents conduct, may lead to an undesirable outcome, and imposes far more severe punishment inequitably by forcing the separation of the family, and by imposing felony penalty for conduct they may or may not lead to some sort of harm we cannot demonstrate. Furthermore, the mother has recently come to newly obtained knowledge that the previous judicial orders granting custody to the accuser were in a risk management venue, and are void for the court having relied on Unconstitutionally vague statutes, and the sole intuition of the judge arbitrarily weighing in on "risk factors" alone, and not material facts or evidence with intent to impose punishment far more severe than civil analysis allows,  and more concurrent with criminal punishment in the

12

severance of liberty rights and rights to happiness without equivalent due process protections as a criminal venue. Criminal penalty has been described as the "taking away that which makes life worth living," and separation of a child and parent is far more sever than the imposition of fine or 6 months incarceration as decided in Sessions v. Dimaya that an immigrant being deported is far more grave than incarceration, and there is no reason to believe that an immigrant being deported is less grave than a parent never seeing their child again.

26.     In the course of the commonwealth's obstruction of the petitioners duty as a prudent parent, the fundamental rights of the accused as defined by the Kentucky Constitution and the Constitution of the United States being free of arbitrary power, and those rights were violated and to the detriment of herself, her children, and of the judicial system in it's willful participation in imposing criminal punishment, and the legislature for delegating a power which was not delegated to the commonwealth in its civil capacity. This matter arises from a custody order granting the custody of the petitioners children to the grandmother (petitioners mother), accuser, and custodial guardian of the children leveraged by the courts unconstitutionally applying the ordinary case analysis to predict the behavior of the petitioner arbitrarily leading to the loss of the petitioners custodial rights in violation of the Constitution of the United States under the 14th amendment rights to due process as well as [clause].

27.     This court will see that the commonwealth court has failed to administer justice in a fair and meaningful way since the initial proceedings in 2010 that led to today's Unconstitutional persecution and incarceration of **a mother who is being punished for being presumed a mere "risk" as being grounds for arrest and criminal charges**, arbitrarily and without substantiated cause to believe the mother had any intent or ability to ever harm her children thereby being of no risk in taking her children into her protective custody, whereas no party has articulated probable cause or reason to believe the actions of the mother was intended to harm the children or violate

13

law. The petitioner has never been charged with any violent crimes in the past, and has no medical diagnosis of mental instability as advertised by the commonwealth in an attempt to prejudice the petitioner for her "disobedience," and to garner public support to convict without authority to do so while knowing the petitioner did not for violating any law.

28.     **This court will see that the actions of the Commonwealth stand to make a mockery of the court by violating the rights of the parties, then publicly gloating about said actions in public making a mockery of the legal profession leaving the judges of the court appearing to be mere insurance salesmen and not men of law** while analyzing behavioral data from the staff and the accuser, but relying upon no material facts in evidence to intuitively determine that the petitioner may possibly be a risk, but because an opinion cannot be conclusionary in law, and without having confidence they will not place a child in the most reliable setting, they willfully chose to cause harm in order to save face in violation of the ethics set forth under the Belmont Report and outside of the guidelines in the provisions of 45 CFR 46 Human Subject Research Protections during the course of the courts behavioral study, for which the Department of Justice is a signatory.

29.     The Petitioner, **crossing multiple state lines including; South Carolina, Florida, Georgia, and Kentucky, suffered injury at the hands of accusers and actors, causing petitioners fundamental rights to be abridged** in the 1st instance, leading to the event that caused for the unlawful, and unwarranted seizure and arrest on [date]   without the Constitutional protections under the Kentucky Constitution Section 10   *"Security from search and seizure -- Conditions of issuance of warrant. The people shall be secure in their persons, houses, papers and possessions, from unreasonable search and seizure; **and no warrant shall issue to search any place, or seize any person or thing, without describing them as nearly as may be, nor without***

14

*probable cause supported by oath or affirmation*, *and for cause of this writ being placed into the docket of this honorable court.*"

30.    The accuser, and reporter of the purported kidnapping, a citizen of Kentucky, and having the power of arrest, and to seek assistance of law enforcement for said arrest, is authorized by the Penal Code, to make arrest under provisions of law and within the limits of the Constitution protecting "accused" persons when she believes she has directly witnessed a crime as provisioned under criminal code.   We can thank *Black's Law Dictionary* for a good definition: "The apprehending or detaining of a person in order to be forthcoming to answer an alleged or suspected crime." See *Ex parte* Sherwood, *(29 Tex. App. 334, 15 S.W. 812).* **The mother of the petitioner, nor the commonwealth has met the burdens provisioned in the law, and had no authority to execute a warrant or make arrest of the petitioner**, nor have they articulated their reasonable suspicion, frame of mind of the accused, or probable cause as required by law leading them to believe the petitioner was not exempt as a parent for the purported crime they arrested her for, and the investigators failed in their duty to identify if there was any other cause of the petitioners actions other than what the accuser set forth such as a duty to her children in protection thereof , superior to that of all others.

31.    It is the reasonable belief of the petitioner that there is no law under which the petitioner is obligated to perform or that a statutory right of action was afforded the parties permitting them to arrest under probable cause that a crime commenced while all knowing natural parents are exempt from kidnapping and that the Kentucky statute improperly categorized what would be a civil infraction under the criminal statute, for which the subsection is ambiguous, arbitrary, and vague leaving the people, agents, officers, attorney's and courts to decide the difference between criminal kidnapping or a civil controversy in violation of the separation of powers, whereas the petitioner is with information and belief that the legislatures failure to

15

faithfully perform their duties to define what the law IS, does not subject the petitioner to a lawful obligation where she has not been fully notified and the delegation of authority was not within the scope of the legislature to delegate to the people involved.

32.     The petitioner is with information and belief that the prosecuting attorney's are with the competency and legal knowledge that in responding to the claims of the accuser in this case they knew to apply the categorical approach before making a determination to conduct an arrest, and had they reviewed the judicial order in place, they could have prevented the injury to the petitioner in her children in recognizing the order does not limit the mother's ability to protect her children, it simply directs the way visitation and time would be administered, and no notice was provided by the judge in his issuance of said order impairing the obligation of the mother or imposing a consequence where mother takes action contrary to the order as she feels is reasonable, necessary, and obligatory, notwithstanding the fact the petitioner is with information the order is void for imposing a punishment outside the scope of a civil category.

33.     The mother of the petitioner, bearing witness to the purported crime, has not provided an affidavit in support of her accusation, and no information, or verified claim has been filed citing her right of action, and no law imposing a duty, to the best of the petitioner's knowledge or belief. A bond hearing, as a right afforded the accused and the Petitioner's mother with assistance from state authorities intentionally, knowingly, and willfully circumvented the law of the petitioner's state, and the United States violating the due process rights of the petitioner protected under the United States Constitution in addition to the statutory rights of the accused, rendering the petitioner without a state statutory remedy at law for being criminally accused in a civil forum.

34.     It is the petitioners reasonable belief upon information, that the petitioners mother reported a non-criminal act as kidnapping vindictively and solely for the purpose of maintaining

16

custody of the petitioners children while knowing she was ill, and without regard for the children's health and safety, and that she intended to place the children at risk of contracting illness where there was a alternative option to place the children in the petitioners care, and for the sole intent to control the situation and not for just cause. The petitioner being the "accused," and the petitioners mother in collusion with state actors, have caused for the miscarriage of justice in falsely reporting a crime the petitioner could not have committed for not being obligated under law or judicial order, and it is this courts duty to assure that further miscarriage of justice does not occur, and that the petitioner be restored back to her liberty so that she may pursue further justice and obtain a proper hearing on behalf of the welfare of her children, to redress her grievances for unconstitutional vague statutory punishments that have been imposed upon her since 2010 in the determination that led to the removal of her children, and the unjust, cruel, and unusual punishment applied for an extended period of time while not being able to exercise her liberty to freely nurture the relationship between her and her children naturally as intended see Section 17 of the Kentucky Constitution  *"Excessive bail or fine, or cruel punishment, prohibited.  Excessive bail shall not be required, nor excessive fines imposed, nor cruel punishment inflicted."*, in addition to Const. U.S. Amend. VIII, prohibited excessive bail.

35.    Moreover, state officials who have made libelous false public statements regarding *"history of mental illness"* and *"sovereign citizen"* such mockery amounts to cruel and unusual punishment prohibited in Amend VIII.

36.    The legal professionals involved in all cases surrounding this cause, and participating in the unlawful issuance and enforcement of Unconstitutional actions were well aware that her and her children were subjected to abuse of process in a simulated legal process, designed to mitigate risks oppressively, and arbitrarily that caused the families relationship to be oppressed, their liberty and freedom to associate abridged unnecessarily, and thereby their

17

happiness severed in a way that makes life unworthy of living, and in no way correctional or educational. The false and fraudulent charges giving rise to this Habeas Petition, and present unlawful incarceration, are Kentucky Code 509.040 Kidnapping, and 509.070 custodial interference. The fact of the matter is that the circumstance giving rise to this petition amount to no more than an improper use of the ordinary case analysis in leu of the categorical approach being the more logical application of law, and as held in [case] for being impossible to determine what one's behavior or conduct may lead to.

37.      **The following history of this matter is important to understand due to the fact that the maternal grandmother and Respondent SUSAN BLANCHARD does not have lawful custody pursuant to which to claim kidnapping or custodial interference in addition to the fact of false claims.**

38.      The Petitioner, NEELY PETRY-BLANCHARD is the biological mother to three minor children, ages approximately eleven (11) years of age for the oldest, hereinafter "Child A, and seven (7) years of age for twin daughters, hereinafter "The Twins". The present fraudulent charges under 509.040 and 509.070 pertain to The Twins.

39.      Respondent and accuser, SUSAN BLANCHARD is mother of Petitioner NEELY PETRY-BLANCHARD and maternal grandmother of Child A and The Twins.

40.      In April of 2010, NEELY PETRY-BLANCHARD was falsely accused in the Family Court of the 9th Judicial Circuit Court, South Carolina of illegal substance drug abuse by the MEREDITHGRIFFIN who is the mother of the **unwed biological father, and the biological grandmother** of Child A. Said allegation was unsupported by reasonable belief how suspected drug use was known by the child, or how said drug use constituted negligence or abuse prior to the court presuming jurisdiction, but even after mom submitted evidence via drug test, the court

still applied arbitrary intuitive risk factors leading the system prejudicing the character of the petitioner in future proceedings regarding her twins. See **EXHIBIT A**

41.    Petitioner, NEELY PETRY-BLANCHARD was not a resident of South Carolina, and again was not wed to the biological father of Child A. Petitioner was visiting South Carolina in an effort to persuade the biological father to participate in the upbringing of Child A, as well as for him to provide child support.   The false allegations made against Petitioner of illegal substance abuse were part of a contrived custody battle, made by the paternal grandmother (on behalf of her unwed son), perpetuated through vexatious litigation, to avoid child support and fraudulently obtain custody of Child A from Petitioner NEELY PETRY-BLANCHARD, the biological mother, and without jurisdiction for not having a paternity acknowledgement or residence as required by Home rule the municipality having jurisdiction over LOCALS ONLY.

42.    As evidenced in **EXHIBIT B**; NEGATIVE test results for Amphetamines, Cocaine, Marijuana, Phencyclidine, and Opiates with collection date March 25, 2010 and with 5 panel (urine/hair) and 10 panel (urine/hair/DNA) drugs tests and the allegations were false, initiating the chain of events leading to this circumstance that has prejudiced the petitioner in the justice system's risk analysis tool without just cause, and leading to the custody of the twins being arbitrarily granted to the accuser in this case.

43.    As evidenced in **EXHIBIT C**: Petitioner NEELY PETRY-BLANCHARD, had "custody" of Child A and was seeking child support.

44.    Over a period of years, Petitioner NEELY PETRY-BLANCHARD, defeated the false allegations made against her, and through Court ORDER restored her physical custody and God given right to parent Child A, with legal custody to be restored in six months.

45.    After restoration of her God given right to parent Child A, and restoration of physical custody of Child A, Petitioner NEELY PETRY-BLANCHARD was made aware by Child

19

A of sexual abuse by the biological father, during the time that Child A was in the custody of the paternal grandmother MEREDITH GRIFFIN and presence of unwed biological father, and Petitioner NEELY PETRY-BLANCHARD initiated an investigation, and Florida Child Protective Services, during their investigation, determined sufficient evidence of child sexual assault perpetrated upon the child by the biological father arbitrarily increasing the risk variable rate to the detriment of the petitioner.

46.     During Court proceedings regarding sexual assault by the biological father of Child A, **and while Petitioner NEELY PETRY-BLANCHARD was literally testifying in Florida Court,** and literally from the back of the courtroom, MEREDITH GRIFFIN absconded with Child A and fled from Florida back to South Carolina.

47.     Five days before proceedings in Florida, on May 25, 2012, and with those proceedings pertaining to sexual assault alleged against the biological father of Child A, MEREDITH GRIFFIN obtained a South Carolina "ex parte Order" restoring MEREDITH GRIFFIN "legal custody" of child A a non-resident of South Carolina.

48.     Not knowing of any unlawful "ex parte Order" "awarding legal custody" of Child A to MEREDITH GRIFFIN, and while having been ordered physical custody by LAWFUL ORDER, Petitioner NEELY PETRY-BLANCHARD located Child A at an elementary school in South Carolina, drove to that elementary school, and took Child A back into her physical Custody in the honorable and faithful discharge of her duty to protect and rear child according to her faith and 1st obligation to her creator and child as impaired by the parties herein named in violation of the Kentucky Constitution Section 5   *"No human authority shall, in any case whatever, control or interfere with the rights of conscience."*

49.     As a result of exercising her fundamental and God given right to take custody of her child, and as a protected person under Title 18, state officials of the state of South Carolina

issued a "be on lookout" alert, resulting in Petitioner NEELY PETRY-BLANCHARD being taken into custody, prosecuted through vexatious and fraudulent South Carolina litigation, and sentenced to incarceration under "color of law" where the state provides no protective legislation for a mother who is fulfilling her obligation in her faith, and cannot protect her from the consequences for said obstruction of her obligation to her Lord and Savior and all parties acting contrary to Kentucky's prohibition on impairing contracts Section 19   *"Ex post facto law or law impairing contract forbidden -- Rules of construction for mineral deeds relating to coal extraction. (1) No ex post facto law, nor any law impairing the obligation of contracts, shall be enacted."* The petitioner has on obligation 1st to God, and through Him to her children, and in seeking to fulfil her obligation in the covenants with Him, the actors in this case have impaired her ability to honor Him.

50.      Attached as **EXHIBIT D** is a letter from the Law Office of David Grossack, P.C. to Senator Gerald Malloy (D) S.C., and the U.S. Senate Judiciary Committee complaining of a *"dysfunctional legal system"* in South Carolina imploring for an *"inquest into the Family Court in Berkeley County"* South Carolina, and that Neely Blanchard was the *"victim of a grossly unfair system which has revealed itself to be a disgrace to the good name of South Carolina"*.

51.      It is a direct result, and self-evident of the above fraudulent court proceedings in South Carolina, that the risk assessment tool utilized by the court caused for arbitrary oppression by prejudicing a mother who has been vindicated of the accusations in the first instance,  that provided an advantage to the Respondent SUSAN BLANCHARD who was granted unlawful "legal custody" of The Twins giving rise to this Habeas Petition.

52.      Respondent SUSAN BLANCHARD paid for much of legal representation of her daughter, and Petitioner NEELY PETRY-BLANCHARD, in the above vexatious and fraudulent custody litigation of Child A, as well as the vexatious and fraudulent "kidnapping/custodial interference" litigation, and has knowledge of the frauds in South Carolina that Petitioner NEELY

21

PETRY-BLANCHARD was subjected to resulting in Petitioner's first wrongful incarceration, demonstrating that the accuser and grandmother of the children, had full faith that NEELY PETRY-BLANCHARD was not a risk of danger to her children, and was in fact a loving mother to them.

53.     In the present matter giving rise to this Habeas Petition, the warrant is facially defective.

54.     In the present matter giving rise to this Habeas Petition, the accuser SUSAN BLANCHARD is making false allegations because she does not have lawful custody and is therefore without standing in the Commonwealth court to bring an action against the accused or on behalf of the children.

55.      In the present matter giving rise to this Habeas Petition, the accuser SUSAN BLANCHARD has made false statements and omitted facts proving innocence.

56.     In the present matter giving rise to this Habeas Petition, the bail is excessive.

## CUSTODY OF HABEAS PETITIONER

57.     Petitioner is in the physical custody of Respondents and is detained at the Hopkins Country Jail located at 2250 Laffoon Trail, Madisonville, Kentucky 42431; Phone (270) 821-6704. Petitioner is under the direct control of Respondents and their agents.

## NEXT FRIEND

58.     Next Friend has long been an accepted basis for jurisdiction in certain circumstances. **Most frequently, "next friends" appear in court on behalf of detained prisoners who are unable, usually because of** mental incompetence **or inaccessibility, to seek relief themselves.** *E. g., United States ex rel. Toth* v. *Quarles,* 350 U. S. 11, 13, n. 3 (1955) (prisoner's sister brought habeas corpus proceeding while he was being held in Korea). As early

22

as the 17th century, the English Habeas Corpus Act of 1679 authorized complaints to be filed by

"any one on . . . behalf" of detained persons, see 31 Car. II, ch. 2, and in 1704 the House of Lords

resolved "[t]hat every Englishman, who is imprisoned by any authority whatsoever, has an

undoubted right, by his agents, or friends, to apply for, and obtain a Writ of Habeas Corpus, in

order to procure his liberty by due course of law." See *Ashby* v. *White,* 14 How. St. Tr. 695, 814

(Q. B. 1704). Some early decisions in this country interpreted ambiguous provisions of the federal

habeas corpus statute to allow "next friend" standing in connection with petitions for writs of

habeas corpus, see, *e. g., Collins* v. *Traeger,* 27 F. 2d 842, 843 (CA9 1928); *United States ex rel.*

*Funaro* v. *Watchorn,* 164 F. 152, 153 (SDNY 1908).  In the case,  *Hackin v. Arizona* 389 US 143,

88 S. Ct. 325, 19 L. Ed. **2d** 347 - Supreme Court, 1967, our highest court stated; "

> In habeas corpus proceedings, **"the practice of a next friend applying for a writ is ancient and fully accepted**." *United States* v. *Houston,* 273 F. 915, 916 (C. A. 2d Cir.). It rests on the premise that "[w]ithout some assistance, their right to habeas corpus in many instances becomes empty and meaningless." *Johnson* v. *Avery,* 252 F. Supp. 783, 784 (D. C. M. D. Tenn.). **The next-friend doctrine was recognized at common law and is given effect in most jurisdictions today, either by statute or by court decision**. See *Collins* v. *Traeger,* 27 F. 2d 842, 843 (C. A. 9th Cir.); *Ex parte Dostal,* 243 F. 664, 668 (D. C. N. D. Ohio); *State* v. *Fabisinski,* 111 Fla. 454, 461, 152 So. 207, 209; *In re Nowack,* 274 Mich. 544; 549, 265 N. W. 459, 461; *In re Nahl* v. *Delmore,* 49 Wash. 2d 318, 301 P. 2d 161; 28 U. S. C. § 2242
> .

Congress eventually codified the doctrine explicitly in 1948. See 28 U. S. C. § 2242 (1982 ed.)

("Application for a writ of habeas corpus shall be in writing signed and verified by the person for

whose relief it is intended *or by someone acting in his behalf*") (emphasis added).  Pursuant to 28

U.S.C. § 2242;

> Application for a writ of habeas corpus shall be in writing signed and verified by the person for whose relief it is intended or by someone acting in his behalf.
> It shall allege the facts concerning the applicant's commitment or detention, the name of the person who has custody over him and by virtue of what claim or authority, if known.

> **It may be amended or supplemented as provided in the rules of procedure applicable to civil actions.**
> If addressed to the Supreme Court, a justice thereof or a circuit judge it shall state the reasons for not making application to the district court of the district in which the applicant is held.

It is the intent of "next of friend", John Anthony Gentry to amend pursuant to Fed. R. Civ. P., Rule 15(a)(1)(B), or supplement, or to seek leave to amend, to correct any purported or alleged defects of this petition to ensure Petitioner is afforded fair due process, given adverse decision based upon defective pleading.

59.     A "next friend" does not himself become a party to the habeas corpus action in which he participates, but simply pursues the cause on behalf of the detained person, who remains the real party in interest. *Morgan* v. *Potter,* 157 U. S. 195, 198 (1895); *Nash ex rel. Hashimoto* v. *MacArthur,* 87 U. S. App. D. C. 268, 269-270, 184 F. 2d 606, 607-608 (1950), cert. denied, 342 U. S. 838 (1951). Most important for present purposes, "next friend" standing is by no means granted automatically to whomever seeks to pursue an action on behalf of another. Decisions applying the habeas corpus statute have adhered to at least two firmly rooted prerequisites for "next friend" standing. **First, a "next friend" must provide an adequate explanation — such as inaccessibility**, mental incompetence, or other disability — why the real party in interest cannot appear on his own behalf to prosecute the action. *Wilson* v. *Lane,* 870 F. 2d 1250, 1253 (CA7 1989), cert. pending, No. 89-81; *Smith ex rel. Missouri Public Defender Comm'n* v. *Armontrout,* 812 F. 2d 1050, 1053 (CA8), cert. denied, 483 U. S. 1033 (1987); *Weber* v. *Garza,* 570 F. 2d 511, 513-514 (CA5 1978). **Second, the "next friend" must be truly dedicated to the best interests of the person on whose behalf he seeks to litigate**, see, *e. g., Morris* v. *United States,* 399 F. Supp. 720, 722 (ED Va. 1975), and it has been further suggested that a **"next friend" must have some significant relationship with the real party in interest**. *Davis* v. *Austin,* 492 F. Supp. 273, 275-276 (ND Ga. 1980) (minister and first cousin of prisoner denied "next friend" standing). **The**

burden is on the "next friend" clearly to establish the propriety of his status and thereby justify the jurisdiction of the court. *Smith, supra,* at 1053; *Groseclose ex rel. Harries* v. *Dutton,* 594 F. Supp. 949, 952 (MD Tenn. 1984).

60.     Attached as **EXHIBIT E** is an Affidavit of Truth by John Anthony Gentry explaining inaccessibility of the Habeas Petitioner, stating as next of friend he is dedicated to the best interests of the Petitioner, and that he has a significant relationship with the real party in interest. **Moreover, the affidavit of Truth attached as EXHIBIT E also complains of abuse of the legal system by Respondents.**

## PARTIES

61.     Petitioner, NEELY PETRY-BLANCHARD is a citizen and lawful natural born person of the United States, and of a suspect class of internationally protected persons as a woman and mother to 3 children entitled a strict review on the side of the petitioner, and a protected privileged parent, having established residence in Florida.  Petitioner does not have a Kentucky driver license as purported in the defective warrant, and does not have a Kentucky address as purported in the defective warrant.  During pendency of unlawful incarceration, she has spent collectively two (2) days in custody, and no lawful proceedings have been conducted, providing for her unlawful incarceration.

62.     At all relevant times herein, Respondent MIKE LOUIS was and is a jail superintendent at Hopkins Country Jail with his principal office located at 2250 Laffoon Trail, Madisonville, KY 42431, Phone (270) 821-6704, ext. 205.

63.     At all relevant times herein, Respondent and false accuser SUSAN BLANCHARD was and is the biological mother of Petitioner NEELY PETRY-BLANCHARD, with her personal residence located at 104 Stonewall Drive, Russellville, KY 42276, Phone (270) 726-0488.

25

64.     At all relevant times herein, Respondent COMMONWEALTH OF KENTUCKY was and is a statewide political subdivision entity of the United States of America, one (1) of fifty (50) several States and Commonwealths, and a unit of government addressed through its chief executive, Governor and Attorney General.  The Office of the Attorney General is 700 Capital Avenue, Suite 118, Frankfort Kentucky, 40601, Phone (502) 696-5300

65.     At all relevant times herein, Respondent "OTHER STATE OFFICIALS UNAMED" are persons who participated in the unlawful apprehension and incarceration of Petitioner, NEELY PETRY-BLANCHARD, names, address and phone numbers presently unknown.

66.     At all relevant times herein, Respondent "OTHER COUNTY OFFICIALS UNAMED" are persons who participated in the unlawful apprehension and incarceration of Petitioner, NEELY PETRY-BLANCHARD, names, address and phone numbers presently unknown.

## FACTUAL ALLEGATIONS & COUNTER CLAIMS

67.     Respondent and false accuser SUSAN BLANCHARD has laid false claims resulting in wrongful charges of kidnapping, pursuant to Kentucky Code 509.040.

68.     Respondent and false accuser SUSAN BLANCHARD has laid false claims resulting in wrongful charges of interfering with custodial rights, pursuant to Kentucky Code 509.070.

69.     Respondent MIKE LOUIS, as jail superintendent at Hopkins Country Jail, has unwittingly and unlawfully held, Petitioner NEELY PETRY-BLANCHARD in incarceration under color of law.

70.     Respondent "OTHER STATE OFFICIALS UNAMED" are persons who unwittingly and unlawfully participated in the unlawful apprehension and incarceration of Petitioner, NEELY PETRY-BLANCHARD.

71.     Respondent "OTHER COUNTY OFFICIALS UNAMED" are persons who unwittingly and unlawfully participated in the unlawful apprehension and incarceration of Petitioner, NEELY PETRY-BLANCHARD.

72.     Kentucky Rev. Stat.§ 509.040 is defined as follows;

> **(1)** A person is guilty of kidnapping when he unlawfully restrains another person and when his intent is: **(a)** To hold him for ransom or reward; or **(b)** To accomplish or to advance the commission of a felony; or **(c)** To inflict bodily injury or to terrorize the victim or another; or **(d)** To interfere with the performance of a governmental or political function; or **(e)** To use him as a shield or hostage; or **(f) To deprive the parents or guardian of the custody of a minor, when the person taking the minor is not a person exercising custodial control or supervision of the minor as the term "person exercising custodial control or supervision" is defined in KRS 600.020.**

73.     The mother has clearly demonstrated that her intent was not to deprive a guardian or parent of exercising control, but was only exercising her right to protect her children, It is clear she was not attempting to advance the commission of a crime, and therefore the defective warrant leading to Petitioner's wrongful incarceration is not based on KRS § 509.040 (a) through (e) and is purportedly and solely based on sub division (f). Here in this matter, Petitioner was exercising lawful custodial control in best interest of her children in her official capacity in the faithful discharge of her duty in trust, due to the fact of unlawful, and Unconstitutional issuance of custodial control improperly granted SUSAN BLANCHARD based upon Unconstitutionally vague statutory definition in violation of the Separation of Powers Doctrine improperly delegating legislative power to the judicial department applying such broad interpretation of the statute no reasonable man could predict how a judge would define the terms therein based upon an arbitrary

intuition of a judge, and without proper notice to persons subject to the statute without full

disclosure as to what acts or inactions, behaviors or conduct would be construed as abusive,

negligent, or other, and for failing to notify the persons subject thereto of the devastating and

inherently criminal punishment that would result from said discretion thereby increasing the risk

of injury to the unsuspecting litigant believing the result would be inherently civil in nature with

no more than a 6 month jail term or fine, or a punishment civilly less severe than that and in

violation of the Kentucky State Constitution Section 26   *"General powers subordinate to Bill of*

*Rights -- Laws contrary thereto are void.  To guard against transgression of the high powers which*

*we have delegated, We Declare that every thing in this Bill of Rights is excepted out of the general*

*powers of government, and shall forever remain inviolate; and all laws contrary thereto, or*

*contrary to this Constitution, shall be void."*

74.     KRS §600.020 defines "abused or neglected child" as follows;

> (1) "Abused or neglected child" means a child whose health or
> welfare is harmed or threatened with harm when:
> **(a) His or her parent, guardian, person in a position of authority
> or special trust, as defined in KRS 532.045, or other person
> exercising custodial control or supervision of the child:**
> 1. **Inflicts or allows to be inflicted upon the child physical or
> emotional injury as defined in this section by other than
> accidental means;**
> 2. **Creates or allows to be created a risk of physical or emotional
> injury as defined in this section to the child by other than
> accidental means;**
> 3. Engages in a pattern of conduct that renders the parent incapable
> of caring for the immediate and ongoing needs of the child
> including, but not limited to, parental incapacity due to alcohol and
> other drug abuse as defined in KRS 222.005;
> 4. Continuously or repeatedly fails or refuses to provide essential
> parental care and protection for the child, considering the age of the
> child;
> 5. Commits or allows to be committed an act of sexual abuse, sexual
> exploitation, or prostitution upon the child;
> 6. Creates or allows to be created a risk that an act of sexual abuse,
> sexual exploitation, or prostitution will be committed upon the
> child;

7. Abandons or exploits the child;

**8. Does not provide the child with adequate care, supervision, food, clothing, shelter, and education or medical care necessary for the child's well-being.** A parent or other person exercising custodial control or supervision of the child legitimately practicing the person's religious beliefs shall not be considered a negligent parent solely because of failure to provide specified medical treatment for a child for that reason alone. This exception shall not preclude a court from ordering necessary medical services for a child;

9. Fails to make sufficient progress toward identified goals as set forth in the court-approved case plan to allow for the safe return of the child to the parent that results in the child remaining committed to the cabinet and remaining in foster care for fifteen (15) of the most recent twenty-two (22) months; or

75.     Petitioner, NEELY PETRY-BLANCHARD has not been found by any competent court to have "abused or neglected" her children as defined in KRS §600.020.

76.     Kentucky Rev. Stat.§ 509.070 is defined as follows;

**(1)** A person is guilty of custodial interference when, **knowing that he has no legal right to do so, he takes, entices or keeps from lawful custody** any mentally disabled or other person entrusted by authority of law to the custody of another person or to an institution. **(2) It is a defense to custodial interference that the person taken from lawful custody was returned by the defendant voluntarily and before arrest or the issuance of a warrant for arrest. (3)** Custodial interference is a Class D felony unless the person taken from lawful custody is returned voluntarily by the defendant.

77.     Due to the underlying frauds resulting in unlawful prior incarcerations of Petitioner, that led the court to error in its issuance of a void order, the unlawful "legal custody" assigned to SUSAN BLANCHARD, and the petitioners' reasonable concern of SUSAN BLANCHARD having illness during a COVID-19 pandemic, Petitioner, NEELY PETRY-BLANCHARD was not noticed in the court order that she was bound to perform where she had a duty and obligation to her children, or that her God given and legal rights prevented her lawful custody of her biologically born children in the event of an emergency that placed the children in danger of suffering

29

immediate irreparable harm and injury, and therefore was not with the reason to believe there was any law prohibiting her from protecting the health of the children, and due to the vagueness of the statutes no reasonable man or jury would believe such action would be illegal – and that it is now clear that there was no violation of KRS § 509.070.

78.     It should be obvious to any rational reasonable person, and especially through trial by jury, given the facts of the underlying litigation pertaining to Child A's unlawful custody litigation, and physical custody thwarted by ex parte Order and physical absconding of Child A, resulting in unlawful custody of The Twins by SUSAN BLANCHARD, that the circumstances giving rise to this Habeas Petition are preposterous on their face and with likelihood that the public's trust in the courts will diminish where a victim of abuse of process under color of law prevails.

79.     Considering Kentucky sentencing guidelines of one (1) to five (5) years' incarceration of Petitioner, NEELY PETRY-BLANCHARD for purported and false allegations of custody interference, and even more ridiculous ten (10) to twenty (20) years for purported and false allegations of kidnapping, the judges for the United States District Court for the Western District of Kentucky should be appalled at such incredulous and false allegations, against a mother who simply asserts her God given rights to care for the well-being of her children.

## CLAIMS FOR RELIEF

### I.     STATUTORY VIOLATION

80.     Petitioner re-alleges and incorporates by reference paragraphs one (1) through (79), above.

81.     Respondents' continued detention of Petitioner is unlawful and contravenes 8 U.S.C. § 1231(a), as interpreted by the Supreme Court in *Zadvydas*, and *Clark v. Martinez*, 543

U.S. 371 (2005), and 8 U.S.C. §1226(c) pursuant to the Ninth Circuit holdings in *Tijani* and *Nadarajah*. Petitioner has not been removed and she continues to languish in detention. She has been and continues to remain unlawfully incarcerated.

## II.   SUBSTANTIVE DUE PROCESS VIOLATION

82.   Petitioner re-alleges and incorporates by reference paragraphs ne (1) through (79), above.

83.   Petitioner's continued detention violates Petitioner's right to substantive due process through a deprivation of the core liberty interest in freedom from bodily restraint.

84.   The Due Process Clause of the Fifth Amendment requires that the deprivation of Petitioner's liberty interest be narrowly tailored to serve a compelling government interest. Any interest Respondents have in detaining Petitioner in order to effectuate removal does not justify the detention of Petitioner.

## III.   SUBSTANTIVE DUE PROCESS VIOLATION

85.   Petitioner re-alleges and incorporates by reference paragraphs ne (1) through (79), above.

86.   Respondents cannot demonstrate lawful legal custody deprivation of The Twins, and deprivation of Petitioner's God given, and fundamental liberty interest of Petitioner, NEELY PETRY-BLANCHARD to parent her children.  Pursuant to U.S. Constitution, Amendment V, "*No person shall be held to answer for a capital, <u>or otherwise infamous crime</u>, unless on a presentment or indictment of a grand jury… nor be deprived of life, liberty, or property, without due process of law*"  In this matter, there is no "*indictment of a grand jury*".  **In fact, there is not even an affidavit of allegations, and therefore, and among other reasons, the warrant is facially defective and the incarceration of Petitioner, NEELY PETRY-BLANCHARD is**

unlawful.  Again, this Court should take note – *"No person shall be held <u>to answer for any</u> <u>otherwise infamous crime</u>, unless on a presentment or indictment of a grand jury.*

### IV.    EXCESSIVE BAIL VIOLATION

87.    Petitioner re-alleges and incorporates by reference paragraphs ne (1) through (79), above.

88.    As stated above, pursuant to the Constitution of the United States, Amendment VIII; *"Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."*  The Commonwealth of Kentucky which is not a republican form of government as evidenced above, has set excessive bail at ten-thousand dollars ($10,000.00), and requires the full amount paid cash, without a system of bondsmen in the state.  This excessive bail has been set during a COVID-19 pandemic, while the citizenry of the entire nation is concerned about putting food on the table and making rent/mortgage payments, and the federal government has passed emergency legislation to prevent collapse of the entire economy.  "Next Friend" John A Gentry has conducted a fund raiser for Petitioner and has only raised approximately two-thousand dollars ($2,000).  **Since it is impossible for "next friend" to raise ten-thousand dollars ($10,000.00), bail is excessive**.

89.    Moreover, the state has unlawfully and maliciously made the false allegation and false charge of "kidnapping" under KRS 509.040.  Pursuant to Kentucky App. Ct. opinion, kidnapping is inapplicable when charged with custodial interference under KRS 509.070 as follows;

> As explained by the 1974 Kentucky Crime Commission/LRC Commentary to KRS 509.060, the combined effect of the custodial interference statute and those prohibiting kidnapping and unlawful imprisonment makes "unlawful imprisonment and kidnapping inapplicable to situations involving the acquisition of control over another because of familial affection or

considerations, and to create a special offense to deal with conduct involving an interference with lawful custody." (at 53)   *KARSNER v. Commonwealth* 582 SW 3d 51 - Ky: Court of Appeals, 2018

## PRAYER FOR RELIEF

WHEREFORE, Petitioner prays that the Court grant the following relief:

(1)  Assume jurisdiction over this matter;

(2) Expedite consideration of this action pursuant to 28 U.S.C. § 1657 because it is an action brought under chapter 153 (habeas corpus) of Title 28;

(3) Pursuant to 28 U.S.C. § 2243 issue an order directing Respondents to show cause why the writ of habeas corpus should not be granted;

(4) Grant Petitioner a writ of habeas corpus directing the Respondents to immediately release Petitioner from custody, or in the alternative, order that Petitioner be provided a bail hearing before a District Court Judge, and reduce bail;

(5) Enjoin Respondents from transferring Petitioner outside of this judicial district pending litigation of this matter or her removal proceedings;

(6) Enjoin Respondents from transferring Petitioner to another detention facility pending litigation of this matter or his removal proceedings;

(7) Make a finding that the Kentucky revised code as contained herein is unconstitutionally vague in violation of the separation of powers doctrine

(8) Find that the charges against the petitioner in the custody matter that granted the accuser custody be set aside or quashed for being void and therefore the charges of the accused be dropped and the accused be released from custody for the unlawful arrest under color of law of an exempt person

(9)  Grant any other further relief as the Court deems just and proper.

33

Dated: March 30, 2020

                               John A. Gentry
                               Next Friend for Petitioner

**Verification by someone acting on Petitioner's behalf**

**pursuant to 28 U.S.C. § 2242**

I am submitting this verification on behalf of the Petitioner because I am Petitioner's Next Friend. I have discussed with the Petitioner the events described in this Petition. I have also personally reviewed court filings, and other documents attached as EXHIBITS to this Habeas Petition as well as online case docket summaries.  On the basis of those discussions, court filings, other documents and online case docket summaries I hereby verify that the statements made in the attached Petition for Writ of Habeas Corpus are true and correct to the best of my knowledge.

Dated: March 30, 2020

                               John A. Gentry
                               Next Friend for Petitioner